Good morning, your honors, and may it please the court. I'm Julian D. Miller of Southern Poverty Law Center. I'm here along with my co-counsel, Eugene Choi, on behalf of the appellant, Olivia Atkinson Boone, and the minor child, Cole Atkinson. This case is about Rankin County Public School District's blatant violation of an disabled student's right to a free and open public education and is legally cut under the Individuals with Disabilities in Education Act or Compensatory Educational Services for that violation. A violation which relegated this child to be 18 years old at a kindergarten level, both functionally and academically. A fact that was upheld by the administrative officer and the administrative hearing officer, as well as Mr. Cooney. Ultimately, we are requesting that this honorable court reverse this district court's decision to deny compensatory educational services to the minor child because it was clearly clear on behalf of the court first that its failure to not apply the compensatory educational standard that is upheld by this court. Additionally, the district court failed to consider my client's academic and functional regression. They failed to consider the proposed autism-specific compensatory educational services that we applied both at the hearing level as well as the district court level. And for the erroneous reliance on my client's denial to place the child back in Brandon Middle School when it lacked those services. Referring this to you that this court would remand this case to district court to make a determination of what compensatory services should entail based on the proposed relief. And so, Your Honor, for the purposes of my argument on comment, I want to go back and start with the hearing officer's determination on compensatory educational services because that is where the error begins. Based on the record of Appeal 508, first, the hearing officer after the complete due process, even though they found that the Brandon County School District violated my client's right to free public education and also found that my client had regressed for over a decade and at the time he was 14 years old at a kindergarten level and academic and functional. They failed to provide relief. The first error was that the hearing officer based the remedy in the case, which they allowed for my client to re-evaluate and have a new IEP with consistent results. This is Record of Appeal 508. The hearing officer based that remedy on the fake violation of the Michael F. Fackers instead of compensatory educational services. Quote, based on my analysis of the Michael F. Fackers, it is ordered that KH should be re-evaluated and a new IEP written consistent with the proposal for re-evaluation and decision. Your Honor, this was a clear error based on the Spring Ridge case, which defines the standard for determining compensatory educational services. Compensatory educational services must be provided to remedy the failure and it must be provided based upon the placement shot back and the position they would have been had the district provided the failure. More specifically, Your Honor, in the Spring Ranch, the Pressman at that siting applied the DRAPER, the Atlantic and Penn School System's 11th Circuit case and basically broke it down and said, a comp ed award is more than ordering the school to comply with its obligation to provide FAPE. Rather, a comp ed award must compensate the child. So, Your Honor, the error began with the hearing officer's decision to base the prospective remedy of re-evaluation and rewriting the FAPE, which is the same legal reasoning that the district court used in its order and not understanding that the consideration of compensatory educational services involves not just providing a remedy to provide FAPE, but providing a remedy that compensates for the violation of FAPE for the period of time that the child was not provided FAPE. In our case, it was 10 years. Secondly, Your Honor, and this is the most egregious error. This is Record of Appeal 509. This is from the hearing officer's order. The hearing officer based his decision on compensatory educational services solely on the illegal placement at Brandon Middle School. It said, quote, because the state put school is Brandon Middle School and OA, referring to Ms. Bone, clearly stated she will never enroll KA in Brandon Middle School. No compensatory education at this time is being awarded. Again, the district court upheld this legal reasoning. That, Your Honor, directly contravenes the precedent around compensatory educational services. Again, Your Honor, if this court allowed the ruling to stand, it would be in direct violation of the comp-ed precedent because in no circuit in the country can the district court deny compensatory educational services simply because the parent chooses not to place their child in an illegal placement. Again, the hearing officer nor the district court cited that comp-ed standard and tried to solely base the determination on that one sole factor without considering comp-ed. And also, Your Honor, and this is a key point, the district court in its order stated that there was no evidence or law for the basis of compensatory educational services, and that, Your Honor, was false. And I want to point to Record of Appeal 128. Your Honor, at both the hearing officer level and also at the court level, Danita Munday, who was our expert, proposed specific autism-based services to provide compensatory educational services to the child. In Record of Appeal 128, we say those services, a comprehensive evaluation, an IEP that includes ABA therapy, language therapy, and occupational therapy in a home community setting, specially designed instruction for post-secondary skills training, parent, family, and staff training on evidence-based practices for students with autism, development of an elopement prevention plan and a crisis response plan. Also, we also requested extended school year services. Your Honor, again, if you go back to the hearing officer's or the judge's order, Record of Appeal 453-456, in nowhere does she cite the proposed autism services that we ask for compensatory educational services. There's no consideration of that at all by the court, and therefore, again, that was clear legal error. In fact, Your Honor, throughout the record, the record is replete, in addition to those proposed services, the record is replete with evidence in which our expert spoke to why those services needed to be provided and what was the basis of it. In Record of Appeal, this is Record of Appeal 1805-1807, Donita Mundy was an expert, put together a stay-put proposal. This was at the hearing officer level. And in that, she requested that the compensatory educational services and the rationale discussed the compensatory services and the rationale behind them. Quote, ABA therapy to address communication, reduction of elopement risk, development and support of a stepwise transition to a high school setting, self-regulation and functional skills for three hours per day by a private clinic, such as Blue Sky Therapy, or services of a certified ABA therapist from Willsway, language therapy for communication skills that are supplemental to oral language, such as assistive technology, picture exchange, iPad communication apps for one hour per week, occupational therapy. Let me slow you down. You haven't had a period yet. You haven't had a period yet, so I'm going to slow you down so you can get a breath. Your side had an expert, right? Yes, Your Honor. Was there . . . and all these cases sort of muddle on me now, but was there an expert from the other side? Yes, Your Honor. Dr. Christy Mung was the expert for the school district. All right. So the hearing officer . . . I'm trying to figure out whether this is a proverbial, quote, battle of the experts, so to speak, in an extraordinarily difficult cognitive area, and whether or not somewhere within your argument, you're arguing that the hearing officer in the district court erroneously concluded based on the other expert versus what your expert was advising, at least with respect to . . . He found that there was error, but your argument most has been about the failure to provide the compensatory services, right? Yes, Your Honor. That's what we're seeking for the court to reverse. So was the other expert report contrary, as I would assume, to what your expert opined? Well, Your Honor . . . In that respect? Your Honor, actually, Your Honor, when we looked at the specific services, there was a couple of areas in which they agreed, if I get the court's indulgence. This is Record of Appeal 1856. This was a response. So as part of the record, Your Honor, both of our experts submitted reports, and then my expert provided a rebuttal to the . . . responded directly to the report of Dr. Mung. And in that, this is Record of Appeal 1856, they both agreed that Cole needs, quote, an assistive technology evaluation and possibly assistive technology, as, quote, maladaptive behavior is not an acceptable means of communication. And so Dr. Mung agreed, quote, that a child that has significant difficulty communicating verbally would likely benefit from the use of an assistive communication device. And so this was, again, a specific proposal as part of Comp Ed that both the parties agreed to. Additionally, Your Honor, both the parties also agreed to the need for ABA therapy. In fact, this is Record of Appeal 1853. Rankin County School District agreed that Cole required, quote, individualized instruction with the support of a board-certified behavioral analyst. And so this, again, was when he was dismissed from Canopy, when he was dismissed from the Canopy program and they admitted, which is in the record, that they did not have the capacity to provide him a free and appropriate public education, one of the rationale was that he would need frequent individualized instruction of a BCBA, which is what we proposed. So to answer your question, Your Honor, there was consistency between both experts in the specific services that we proposed for Comp Ed. But, Your Honor, even if there was disagreement, if you review the district court's order, there was no consideration of any of that. There was no consideration of proposed services. There was no, again, there was no fact and evidence, according to the district court judge, to prove that the Commissioner for Educational Services went again, Your Honor, as I quoted. The record was replete with that. We proposed the specific services. We had our expert, which also their expert agreed to the benefits of those specific services to provide compensatory educational services. And we defined all of this. And so under the legal standard for Comp Ed, the district court had to make a consideration of those proposed services and make a determination on whether or not my client deserved to be compensated above and beyond just the provision of fate. And that's where the court failed. Under any legal standard, this court would have to remand back to the district court in order for them to make the determination of Comp Ed. Because, again, what's essential to that standard, Your Honor, also, too, and what even makes the lower court decision even more egregious is the fact, theoretically, the court didn't consider the fate violation and regression. You know, again, the district court clearly agreed with the hearing officer's decision that this was a severe violation of fate and that this shall regress for 10 years. But it almost as if when it came to determining Comp Ed, they just kind of put that on the back burner. And when that is fundamental, that's the fundamental way in which you get to comp determination. And in our case, we provided a proposal for that, again, which was not considered. And so I think this ruling by the district court contravenes the precedent from these courts that have found compensatory educational services for even less violations of fate. In fact, Your Honor, if you look at the district court's opinion, in the Spring Branch case we cited, the district court essentially said that that case is not analogous to our case, and therefore, you know, that was a reason which they said they would not fine for Comp Ed. But, Your Honor, if you look deeply, the fate violation in which the district court admitted in the Spring Branch case was much less severe than our case. In the Spring Branch case, the minor child in that case had an adequate IEP that the district just failed to implement. In our case, this child for 10 years was not provided evidence-based autism services that he first got when he was first grade in Oakdale. And when the district disbanded that program, he never received it again. And he had, you know, he regressed academically and functionally. He had severe behaviors. Yes, Your Honor. For the 10 years, what kind of compensatory education were you proposing? So, Your Honor, what I had stated in Record of Appeal 128, autism-based services, ABA therapy, language therapy, sensory training, extended school year services, functional skills. And so that's, and so, and again, Your Honor, and this is just a procedural matter, we usually, for these appeals, we get an opportunity for a bench trial so we can present, you know, present evidence and whatnot to go through these things. We never got that opportunity in this case. This was decided on the briefs. So we never got to go back and say, okay, in addition to, you know, this is what we're asking for, we can put some hours to it and, you know, how much time, you know, that it would take in one specific program. But that's why we're asking for the remand so we can lay out that specific, more specific program that we propose for our content in order to get the child back to where he would be. Well, Your Honor, I would leave that up to professionals. There are professionals, like psychologists, like commenters who work with children who can look at their functioning levels based on the data and then make a determination about where they would be and then quantify the number of hours of therapy and ABA therapy and sensory training and all those different things. But again, we never got that opportunity because the district court didn't consider any of this at all, which, again, contravenes the precedent around compulsory educational services. All right. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Deborah Challoner on behalf of the Rankin County Public School District. Your Honors, this court should reverse the award of attorney's fees and affirm the denial of compensatory educational services for two reasons. First, the district court and the hearing officer failed to correctly apply this court's precedent holding that the school district can determine the site location of special education services without parental input. Second, the hearing officer and the district court failed to correctly apply Andrew F. because they did not consider the child's unique circumstances in concluding that the district denied him a FAPE or that his IEP did not provide benefit to him when he was enrolled at the care school. Additionally, the hearing officer and the district court ignored the undisputed fact that the appellant never questioned the services that were provided at the care school, never complained about them, and even requested that he stay at the care school in the fall of 2020 because she didn't want him to change locations when he was returning to school after the schools had been shut down for COVID. This is a fair show. They're unhappy. You're unhappy. I mean, his client's unhappy. The county's unhappy. You both are saying to us that, you know, there's an error below this egregious. You know, when you ask the Court of Appeals to put the pieces together in a matter, you know, with a child that has some severe issues, but both are saying something went awry below, either with respect to the hearing officer or whatever, whatever. So I guess my intuitive feel for it, without getting deeper, is why shouldn't y'all go back and have a do-over? Since your side's unhappy about the attorney's fees and finding this side, the court says, yes, there was a violation, but. So, I mean, it sort of comes to us in a hybrid capacity, which we're going to do our jobs, but it's a little dangled to where we have both sides saying, well, there's error below, you know, by the hearing officer, otherwise, but, you know, push forward. We're taking, you know, this record. We've got expert reports and on and on and on, and that's, you know, kind of. Your Honor, it's a thicket. But our position is that there are some legal errors here that need to be addressed, and I think we have to pull apart the issues of site location of services, educational setting of services or least restrictive environment, and educational program. And this Court's precedent recognizes those distinctions in the White versus Ascension Parish School Board all the way through ER versus Spring Branch Independent School District. And this case is probably most similar to the Spring Branch case, where the school district representative called the parent and said, we may transfer your child to another school. Did I miss here? Didn't counsel officers say this case was most similar to Spring Branch? Well, there's more than one Spring Branch, so I'm not clear if that's the same Spring Branch. I thought I was on to something. Right. But this is a different issue. This issue is not about compensatory educational services. The problem here is that this child was zoned for Brandon Middle School, and Brandon Middle School, the district believed, could provide him with an appropriate IEP and could implement it. And the school district said when CARES dismissed him, he's going to Brandon Middle School. That was up to them to decide. That's the school district's position, and that's what this Court's precedent says. Now, Spring Branch, the White case, they aren't exactly identical factually, but Spring Branch is the closest because the school district called the parent and said, we think we're going to have a life skills program at the school closest to your child's home, and we're going to transfer her. And the parent said, well, I don't approve of the transfer, but if you will do X, Y, and Z for me, we'll transfer her. But later on, they complained. They said that there had to be an IEP meeting before the transfer could happen. And this Court said, no, there doesn't. That is a decision that's up to the school district. And what happens here in the cases, to some extent, but certainly at the operational level, everything gets conflated. Location of services, setting of services, or least restrictive environment, educational program. And here what the school district said and tried to tell Ms. Boone is, he's going to Brandon Middle School. And what she said is, no, he's not. And our position is that the parent cannot veto the site location. And that at that point, what happened is, she said he's never going to Brandon Middle School. She said that four to five times in the last IEP meetings that were held in 2020. He's not going there. And then she stopped participating in the process. Wasn't there an elopement problem? So there is an alleged elopement problem. And her, again, we have to separate site location from the other things. She wanted him to go to Florence High School. So that was her solution. I won't send him to Brandon. He has to go to Florence High School, which is also in the Rankin County School District, but much farther away. And it's not the school he's zoned for. And she said, what I like about it is it's smaller, and I'm worried about elopement. The high school had 700 students. The building, the evidence shows, and that's in the record at, it's in the record, that the building he would have been in at Brandon Middle School had 854 students in it. So there was a marginal difference in size. One school was no more locked than the other. And one of the things she liked about the program at Florence High School was the students, some of the students went out in the community to learn vocational skills. And she expressed no concern about elopement with regard to that program. So there were alleged concerns about elopement, generalized concerns about the size of the school. And she said, Brandon is too big. I'm not sending him there. But the district's position is that she's vetoing site location. She wants the location of Florence High School, and she wants that setting, which is really no different than what Brandon offered. The evidence showed that basically everyone agreed, and her desire for Florence shows this, that they had self-contained classrooms, it was a small student-teacher ratio, which everyone agreed he needed. The ratio was actually smaller at Brandon, three teachers to four students. He would have been the fifth. And Brandon could provide a functional skills program, which everyone agreed he needed, and which she said she wanted for him. So the things that Florence had, Brandon had. But she said, he's not going there. I insist he go to Florence High School. And again, our position is that that's not her decision. I get the point that from the standpoint of the school district, you don't want parents vetoing placement and all that, but it's still not lost on me. It's the mother and the dad of the child. They're living with him 24-7 with the issues, et cetera, et cetera. The parents' desires just don't become theoretical in terms of jail. And it's still a part of the Brandon County School District if the size and from her perception, you know, he's going to adapt better, et cetera, et cetera. Aside from not going to quote her to veto it, but I mean that's why these are IEPs. They're specialized plans adapted to the kid, et cetera. So what's so egregiously off the chain? I'm just asking. For her managing her child, the past developmental situations, et cetera, she says, I want Florian, et cetera. You said the size, et cetera. I'm just saying other than not wanting the policy that a parent vetoes site, but if you're doing an IEP that's specialized and so on and so forth, I mean what was the big deal? Well, I shouldn't put it that way. But I mean beyond the non-veto, I mean you need cooperation to make these things work when you have these situations. So I'm trying to understand what's the big school district pushback? Nope, you can't tell us where to put it. Well, Your Honor, we do need cooperation, but she withdrew from the process, right? So the problem with what's happening here is the lower court and the hearing officer adopted a rule that this court has never adopted, and this is what they said. The district may choose the school unilaterally unless there's a fundamental change in or elimination of a basic element of the IEP or educational program. So that tells the school district, okay, now you don't, you aren't sure what you can do, right? It injects uncertainty into the process, and it's not a rule this court has ever adopted. The rule comes from cases that are addressing setting, or least restrictive environment. It's never been applied in this circuit to site location. And the reason that the clarity is needed is because of this type of case. If Ms. Boone had realized or been advised the site location is up to the school. Now, you must participate in good faith in the process. You can't simply withdraw, say you're not available, which the record shows is what happened. It's just theoretical. Okay, you say to her, site location is our call. However, we need participation and cooperation from the parents. We will conditionally put him in Florida. But the only way we're going to do that, you've got to cooperate 100% down the line to make this thing work. Was that something that couldn't happen? No, I think that she could, you know, she can make the choice at some point that had. I'm just saying as a part of getting her 100%, because the record shows she withdrew, and I take that as true. I'm just saying within the range to say, okay, you don't get to make this call. However, under these circumstances, we'll let him go to Florida. But the only way we'll do it is you've got to be 100% cooperative, the plans, yeah, yeah, yeah, yeah. Otherwise, it's a no-go, and you get the benefit of her cooperation. But the Rankin County School District is very large. And if you say to her, okay, you can veto site location. You know, we're going to cooperate. Well, now we've created a bigger problem. Well, I get all that. But, again, I still come back to, you know, having had tons of these cases with IEP. By definition, they are specialized to the student. Correct. You've got 12,000 students in the school system. The IEP programs are designed for these kids developmentally. And so to have this big rule, that's one thing, but what's the other? I said that. That's why I let off by saying you're unhappy, they're unhappy. Your Honor, the IEP was individualized. It had a behavioral intervention plan that addressed elopement. And the issue is even if we say, okay, the school district predetermined location, they shouldn't have done that. They predetermined setting. They shouldn't have done that. Well, that's a procedural violation. So she's got to show she was denied meaningful input. It's significantly impeded meaningful input or denied educational benefit. And what she cannot prove here and hasn't proven is that an appropriate IEP could not be implemented at Brandon Middle School. What's the child's status now? He has never returned to the Rankin County Public School District. And the record, the briefing, the other side's briefing, shows that he, I believe, he's never been back in school. And that's my understanding, but counsel opposite could confirm. But, Your Honors, you know, there's another issue here. So part of what's going on or is problematic here is taking CARES, education, Brandon issues and conflating them together. So, you know, the second issue here is the application of Andrew F. in the conclusion that there was no academic benefit or benefit, specifically academic, from the IEP that he had at CARES. The problem with that analysis is that this is what the district court and the hearing officer said. Regression from first grade to kindergarten after an IEP for six and a half years is not progress. Completely fails to take into account the unique circumstances of the child, which is what Andrew F. requires. Now, the hearing officer identified this child's disability, severe autism disorder, essentially nonverbal, cognitive disability, but did not consider that at all, that the assumption is if you have an IEP for six and a half years, you ought to be doing something besides kindergarten instructional materials. But that's just an assumption. It doesn't take into account at all whether that was reasonable for this child. And there's no evidence in the record that he would be in some different place but for the alleged violation. And that's the problem with an award of compensatory educational services. You're supposed to do that so you can say, well, there was a violation, he would be in a different place. Well, there's no evidence that he would be in a different place. And as we said in our briefing, I mean, the idea that he regressed, we believe is clear error. There's no evidence he was ever functioning on a first grade level. The evidence showed, and their expert testified to this, that in 2014 when he was evaluated, he was, quote, extremely low and delayed. He was not functioning on the same level as his peers. That's when he was seven. That's when that evaluation was done. The evaluation says grade first. That's the only evidence that he was ever functioning on first grade level. So if we start from there, I mean, if the court were to accept clear error there, then you can't show that he regressed and you can't show that he should be somewhere different just because he had an IEP for six and a half years. Now, Your Honors, even if you find that he regressed, I mean, that's a factual finding, if you defer to it, you still can't show that, well, he should be functioning somewhere other than a kindergarten level. And the other issue here, Your Honors, is that he was at the care school because of behavior. He was not able to, the decision was to be educated in a public school setting because his behavior needed to be remediated. There were elopement issues, aggressiveness issues, OCD tendencies, so he went to the care school. And in order for him to be able to access education, he needed to have that behavior remediated. To say there's no academic benefit really is just taking a very narrow view of academic benefit and, again, not considering the unique circumstances of this child. But another problem here, Your Honors, is that there's no evidence at all in the record that Ms. Boone ever objected to any services at CARES, any IEP while he was at CARES, never complained. The only time she raised the issue of a deficient IEP at CARES is in this litigation. And from the district's perspective, that really seems unfair to accept services, agree to them, even request that he stay there, then request that that location be his stay-put place, and then turn around and say, you denied him a FAPE while he was there. So two problems with this holding or finding that he did not get any benefit from his IEP. Your Honors, the third issue for us, for the district, is attorney's fees. Now, if you agree with us on the legal problems here, of course, you should reverse the award of attorney's fees. But even if you say, okay, we defer, there was a denial of FAPE here. The problem with the attorney fees award here and the conclusion that Ms. Boone is a prevailing party is that she did not receive any relief. Well, there are three problems. First, she didn't receive any relief that she couldn't have gotten if she participated in the process. So the relief the hearing officer awarded was a reevaluation, discussion, modify the IEP as necessary, have an IEP meeting, discuss, come up with a plan for elopement. If she had not withdrawn from the process over the issue of site location, then she could have requested an evaluation, she could have sat down at the table to develop an IEP that addressed whatever her concerns were about elopement that weren't covered by his behavioral intervention plan, but she didn't do that. She just withdrew from the process and brought this litigation. The second problem is that, as you can see from the relief that was ordered, there were no changes to the child's IEP. So nothing enduring and nothing that materially altered the legal relationship between the parties. And then finally, Your Honors, with regard to the relief, ultimately, the appellant and the child received no direct benefit. What the record shows in the district court filings is that, ultimately, when the hearing officer issued his decision, the district afforded all of that relief. And the result was a recommendation that he attend Brandon Middle School and rejection of Florence High School as an inappropriate program for him. And, again, Ms. Boone withdrew from the process and never enrolled him back in the Rankin County School District. So, effectively, whatever relief she got had no impact whatsoever, provided no benefit. So, Your Honors, even if you find a denial of fate, the award of attorney's fees should be reversed because Ms. Boone is not a prevailing party. All right, you've got a red light, Counsel. You have a red light. I was trying to let you know. Oh, yeah, I do have a red light. May I briefly conclude?  Your Honors, we ask this court to look carefully at the legal errors in this case to clarify the precedent that the district can choose the site location of services with regard to educational setting or environment. Yes, the parent has to have input. But with regard to the site location choice, at least initially, that has to be up to the school district. And the parent cannot withdraw from the process, then sue and get attorney's fees with regard to site location. We also ask this court to look carefully at the Andrew F. issue in this case and recognize that Ms. Boone never complained about the services or the IEP while this child was at CARES and even requested that he stay there. So, for these reasons, we ask you to reverse the award of attorney's fees and affirm the denial of compensatory educational services. Thank you. All right, back to you, Mr. Miller for rebuttal. Thank you, Your Honors. I'll be brief. I just want to address Counsel Opposite's obfuscation of the issues of this case. This case is not about zoning. It's about the provision of a free and appropriate public education. Under the Andrew F. standard, a provision of a free and appropriate public education, it is a school district's affirmative duty to provide a child an individual education plan that is reasonably calculated to meet that child's unique needs, and it's clarified in that case, which the Fifth Circuit has applied, that that means for that child to advance from grade to grade. At the end of the day, Your Honors, the hearing officers, the district court, agreed that the IEP that was provided to that child, the program, over 10 years, did not provide that child the FAPE. In fact, Your Honor, I want to refer to the record. This is Record of Appeal 1752. This is the 2021 IEP, the latest IEP, that the minor child was provided from the school district, and this is in their IEP. For services, Cole is receiving quote, instructional materials on a kindergarten level, quote, documented basis for the decision, Cole functions below grade level due to issues related to his autism. In order to meet his needs, materials must be presented at his functional level. At the time, Your Honors, Cole was 14 years old. A 14-year-old is supposed to be what in the 8th grade? He was operating at kindergarten level. Now, while students with severe autism, yes, won't necessarily be on their exact grade level, it's obvious he wasn't making progress because when he was in 2014, just 7 years ago, when he had an IEP based upon the district's IEP, he was at a first grade level. So he even regressed less in that period of time, regressed even more in that period of time between the time he was in CARES up to that level. So, Your Honor, the district court made these findings and counsel opposite can't try to re-litigate and distract you all with the zoning issue when this was about the provision of fate, which he failed. And let me be clear, Your Honor, what is typical in these cases is school districts always use the quote, blame the parents argument. The parent, you know, left the process, stayed and stayed involved. Your Honor, even if Ms. Boone neglected her child, the IEP allows the district, even if a parent is not involved in the process, allows them, because of that affirmative duty to provide fate, to override the parent and provide services, provide a program. The law allows for that because the parent has affirmative duty. This was not because of my parents. Ms. Boone is here in this courtroom. She's a committed parent. She loved this child 24-7, trying to keep him alive and safe from the district's failure to provide him services to be able to function day-to-day. She got, and we are in this process, and we're before you for years, because the district would not provide the autism-based, evidence-based services over 10 years that the district was legally entitled for him to have. And so that is why we're here. And so there's no need to re-litigate fate because the failure, the violation of fate is clear and it is egregious. In fact, Your Honor, I would say that this fate violation in this case is more egregious than any special education cases seen under this circuit. And so therefore, for that reason, we ask also to uphold that ruling, but also to provide the compensatory educational services because, Your Honor, I also want to mention, and counsel opposite in their brief tried to say, oh, there was some progress, even though he had a grade-level deficit, he was making some de minimis progress based upon the self-serving testimony of their district representatives. Well, Danita Munday, my expert in that hearing, this is Record of Appeal 1284-1293, she basically broke down how the progress goals in the IEP are not, quote, not specific, narrow, measurable, or instruction, choosing methodology, immeasurable, observable, but the purposes of developing goals and driving whether or not they achieve that. In other words, she determined how the goals listed in the IEP were not consistent with the behavioral sheets and teacher observations based upon that. So, Your Honor, for our position is there was no progress made by this child because you couldn't determine it based on the record. And furthermore, even if you refer to the progress that they claim he made, the standard is clear that the progress has to be more than de minimis. We cited the case, court's indulgence, in the RP v. Almeida Heights Independent School District case 703-F-3801 that, quote, nevertheless, the educational benefit to which the IDA refers, to which an IEP must be geared, cannot be a mere modicum or de minimis. Rather, an IEP must be likely to produce progress, not regression or trivial educational advancement. So, again, the fate violation stands. The record is clear on that. And finally, Your Honor, I would just say, if you'll just indulge me, the Individuals with Disabilities in Education Act was enacted because when you go back to the 1960s, at one point there were six million disabled children in the school system who were relegated to one room, received no educational services, were just completely segregated and relegated to one room. And so the IDA was enacted so those children could be educated and treated as their peers, their non-disabled peers. Fifty years later, this case essentially embodies the reason why we have IDA, because my client has ultimately been relegated to one room for 10 years in the failure to provide autism-based services. So I assure you, if this court upholds the district court's ruling on Comp Ed, this will put us back 50 years and school districts will be able to do what Rankin County did. Oh, just don't give them services for 10 years and we'll just litigate and no one's going to go to the Fifth Circuit on it. No. The record is clear. The law is clear that this child, my child, this child is entitled to compensatory educational services. We ask the district court to reverse, we ask this court to reverse the district court for compensatory educational services to affirm the violations of faith and attorney's fees and any other... Quick question. The hearing officer denied the award of compensatory services, right? Well, the hearing officer and the judge, and the district court judge. I was about to get there. The hearing officer denied compensatory services notwithstanding the expert work, et cetera, et cetera, within the record. The district court agreed with the hearing officer, correct? Yes, Your Honor. All right. So on appeal, you're asking us to reverse those factual determinations? Your Honor, we're saying that the district court didn't make any factual determinations. We're saying the district court... But I mean, in many cases, let's say if we have a district court that adopts the magistrate judge's R&R, or the district court adopts the bankruptcy court's R&R, they may, in some cases, not do new work, but they adopt, in effect, what was done. I'm not saying it's a perfect analog, but you've got a hearing officer here, and that's where the record was made, right? Yes. And the district court agreed with that or affirmed that, if you will. So we've got the two levels of denial of the compensatory services, right? Yes. In the context of you got an expert, they had an expert, right? Well, Your Honor, let me clarify, and I want to go back to my previous argument. The issue with the hearing officer's ruling was also legally erroneous because they didn't . . . I'm not asking you to re-argue it. I'm just trying to make sure I've got the context straight. The hearing officer is fact-bound. We know what the law is. Yes, we do. In effect, you're asking us to reverse the factual determinations, mixed questions, that were made by those two layers, right? Yes, Your Honor. Okay, I just want to make sure I'm clear about what you're asking for. That's all. I've got the argument. I just want to make sure that at least I'm clear about what the relief you're asking. Okay, all right. Well, thank you, counsel. Thank you, Your Honor. Thank you, Ms. Shalner. We appreciate your briefing and argument. We'll get to it, and we'll decide it. That concludes the orally argued case before the panel. They, along with the non-orally argued cases, will be submitted, and we will get it decided. Having said that, the panel stands in recess until 9 a.m. tomorrow.